WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Simon Russell,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Mauricio Alberto Flores, et al.,<br><br>　　　　Defendants. | No. CV-14-02474-TUC-RM (EJM)<br><br>**REPORT AND RECOMMENDATION** |

　　　　Plaintiff Simon Russell filed this action on November 13, 2014 against Defendants Mauricio Alberto Flores and Werner Enterprises, Inc. (Doc. 1). Plaintiff later moved to voluntarily dismiss Defendant Flores, and subsequently filed a new action against Flores on February 16, 2016, in case number CV-16-00088-RM. On August 16, 2016, the Court entered an Order granting Plaintiff's motion to consolidate the two actions. Plaintiff alleges claims for negligence, negligence per se, and willful or wanton conduct, based on an auto accident in which a truck driven by Defendant Flores and owned by Defendant Werner collided with Plaintiff's vehicle, causing him injury.

　　　　On March 15, 2016 Defendant Werner filed a Motion for Partial Summary Judgment re: Punitive Damages and Negligent Hiring (Doc. 56), and on May 5, 2016 Defendant Werner filed a second Motion for Partial Summary Judgment re: Negligent Hiring (Doc. 74). On August 22, 2016, Defendant Flores filed a notice of joinder to Defendant Werner's Motion for Partial Summary Judgment re: Punitive Damages and

Negligent Hiring (Doc. 56). (Doc. 96). The motions have been fully briefed, and the Court heard oral argument from the parties on December 22, 2016.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for a Report and Recommendation. For the reasons set forth below, the undersigned recommends that the District Judge enter an order granting in part and denying in part Defendant's Motion for Partial Summary Judgment re: Punitive Damages and Negligent Hiring (Doc. 56) and granting Defendant's Motion for Partial Summary Judgment re: Negligent Hiring (Doc. 74).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 22, 2014, Plaintiff was driving westbound on US-70 in his Toyota pick-up truck. (Doc. 1 at 3 ¶ 14). US-70 is a winding, non-divided, two-lane road, with no street lights. (Doc. 1 at 4 ¶ 16). Defendant Flores was driving eastbound on US-70 in a tractor trailer owned by Defendant Werner. (Doc. 1 at 3 ¶ 13). The parties do not dispute that Flores crossed the double-yellow line in a marked no-passing zone and drove in the westbound land, crashing his tractor trailer into Plaintiff's vehicle. (Doc. 1 at 4 ¶ 19).

The crash occurred at approximately 11:30 p.m. on a dry and clear night. (Doc. 1 at 4 ¶ 15). Flores testified that at the time of the crash, there were vehicles behind him and in front of him. (Doc. 75 Ex. B at 9). He stated that in order to pass the other vehicles, he would have to go over 65 miles per hour. *Id.* However, his truck was governed at 65 miles an hour, and he could not go over that speed. *Id.* Flores stated that he was not trying to pass any other vehicles. (Doc. 110-1 Ex. B at 13). Flores also stated that he did not remember driving on US-70. (Doc. 75 Ex. B at 9; Doc. 57-1 Ex. B at 13).

Flores told the police officers at the scene that he had a tire failure and that is why he was in the westbound lane. (Doc. 75 Ex. B at 10–11; Doc. 100-1 Ex. 1 at 7). He remembers moving into the westbound lane and crossing the double yellow lines so that he could pull over to the open area and stop his vehicle because he believed he had a tire failure. (Doc. 75 Ex. B at at 13; Doc. 57-1 Ex. B at 14). Flores does not remember what

1 type of tire failure. (Doc. 57-1 Ex. B at 19). Officer Benton completed an Arizona Crash Report and stated that "there were no pre-impact skid marks or evidence of tire failure on the roadway or on the tires for either [Plaintiff or Defendant Werner's vehicle.]" (Doc. 100-1 Ex. 1 at 8). Plaintiff's accident reconstruction expert, Patrick R. DeJonghe, opined that the flat to Flores' right front tire resulted from the collision impact and did not occur before the crash. (Doc. 100-1 Ex. 9 at 86). DeJonghe also opined that Flores was traveling in the westbound lane for approximately 1 minute before the crash. (Doc. 100-1 Ex. 10 at 103). An affidavit from Plaintiff's counsel, Greg Sakall, notes that Defendants have not disclosed an expert to testify that Werner's tractor had a pre-impact tire failure. (Doc. 100-1 Ex. 8 at 80).

Plaintiff has no memory of the accident. (Doc. 57-1 Ex. C at 24). He remembers driving on US-70 prior to the crash, and then the next thing he remembers is about a week later, being wheeled into a van to go from UAMC to HealthSouth. *Id.*

Witness John Ship was driving a tractor trailer in front of Defendant Flores at the time of the accident. There was a long line of cars behind him, and Ship noticed Flores' truck move completely into the westbound lane and begin to pass him. (Doc. 100-1 Ex. 6 at 65). Ship testified that Flores' truck was gradually passing him and that they were going the speed limit uphill. (Doc. 110-1 Ex. A at 4). The road was dark and windy, they were in a no passing lane, and there was no way to see over the hill. (Doc. 100-1 Ex. 6 at 66). The front of Flores' truck got up to the front door of Ship's truck and then Plaintiff's vehicle came over the hill. (Doc. 110-1 Ex. A at 5). Ship stated it was only "seconds" from the time Plaintiff's truck crested the hill to the time of impact. *Id.* Ship did not notice Flores in the left lane passing any other vehicles prior to the accident. *Id.* at 8. Flores stated that he did not remember passing Ship's vehicle. (Doc. 75 Ex. B at 11).

Witness William Richardson was driving a tractor trailer eastbound on US-70 at the time of the accident. Richardson stated that traffic was moving along, "[a]nd all of a sudden Werner decided to jump[] out across those two yellow lines and passed." (Doc. 100-1 Ex. 7 at 73). Richardson stated that there were "four cars ahead of [Flores] and

another big truck ahead of him." *Id.* Richardson saw Flores pull "all the way into the westbound lane" and stated that Flores "was trying to pass all the traffic." *Id.* Richardson did not see the Werner truck make any erratic movement like there was something wrong with it; it was "steady and straight." *Id.* at 77.

Witness Courtney Schuneman-Patel submitted an affidavit and stated that she and her husband and daughter were driving eastbound on US-70 and came up behind the Werner truck. (Doc. 100-1 Ex. 5 at 57). She estimated they were behind the Werner truck for at least 5 minutes. *Id.* Schuneman-Patel stated that it was dark out, there were no overhead lights on the road, there was traffic, the road was narrow and winding with only one lane in each direction, and they were driving up and down hills. *Id.* at 58. She "saw the Werner truck pull out a few times into the oncoming lane to see if he could pass. He would pull out a little ways and then come back into the eastbound lane. This happened at least a few times over a few miles." *Id.* Schuneman-Patel recalled that "[w]hen the Werner truck finally pulled all the way out into the westbound lane and started passing the 18 wheeler in front of him, . . . we had just passed a no-passing sign and [] there were double yellow lines on the road." *Id.* She "saw the Werner truck gradually begin overtaking the truck in the eastbound lane" and "didn't see the Werner truck make any sudden movements." *Id.* "Approximately 10 seconds after the Werner truck moved into the oncoming westbound lane and began passing," Schuneman-Patel saw "headlights of a westbound vehicle come over the hill." *Id.* at 59. "Just before impact, [Schuneman-Patel] saw the Werner truck veer to the left shoulder and hit the pick-up." *Id.* After the crash, Schuneman-Patel called 911 and then she assisted Plaintiff until the EMTs arrived and he was transported into a helicopter. *Id.* at 59–61. She stated that while she "was at the collision scene [she] saw the two Werner drivers standing around" and "never saw them help or offer to help anyone." *Id.* at 61.

During his deposition, Flores stated that "[y]ou cannot cross any solid yellow lines in any situations . . . it's against the law," and agreed that to do so would be extremely hazardous and very dangerous in any type of vehicle. (Doc. 75 Ex. B at 12). He believes

- 4 -

|   |   |
|---|---|
| 1 | that his decision to go to the opposite side of the road to pull over caused the crash, and |
| 2 | he thought that there was room to safely pull over to the opposite side of the road. (Doc. |
| 3 | 57-1 Ex. B at 21). Jaime Maus, Vice President of Safety and Compliance at Werner, |
| 4 | testified that "Werner drivers are taught to obey the rules of the road so that they do |
| 5 | prevent accidents on the roadways." (Doc. 100-1 Ex. 3 at 42). In response to the |
| 6 | questions "Do you have any rules that Werner truck drivers should not pass other tractor- |
| 7 | trailers on two-lane highways?" and "Do you have any rules that Werner drivers should |
| 8 | not pass other tractor-trailers while they are going uphill on a two-lane highway?", Maus |
| 9 | stated that "It's up to the driver and what they are encountering at that time." *Id.* at 46– |
| 10 | 47. She explained that they do not have a rule because "it depends on the speed, it |
| 11 | depends on the hill, the steepness, it just depends on other factors, and it's not against the |
| 12 | law to pass when applicable." *Id.* at 47. |
| 13 | Defendant Werner admits that Flores was acting within the course and scope of his |
| 14 | employment when the accident occurred. (Doc. 7 at 2 ¶ 5). Werner further admits that |
| 15 | Flores "failed to exercise reasonable care and fell below the standard of care in the |
| 16 | operation of the freightliner truck." (Doc. 12 at 3 ¶ 19). At oral argument, Werner |
| 17 | clarified that it is admitting that Flores was negligent. (Doc. 117 at 5). |
| 18 | Following the accident, Defendant Flores was charged with endangerment and |
| 19 | reckless driving, and pled guilty to endangerment. (Doc. 100-1 Ex. 11 at 106). |
| 20 | Plaintiff filed this action on November 13, 2014. (Doc. 1). Plaintiff alleges |
| 21 | negligence, negligence per se, and willful and wanton conduct against all defendants. |
| 22 | Plaintiff seeks damages based on pain, discomfort, suffering, disability, disfigurement, |
| 23 | and anxiety; medical care, treatment, services, and expenses; lost earnings and decreased |
| 24 | earning power or capacity; loss of enjoyment of life; punitive damages; costs; and pre and |
| 25 | post-judgment interest. Defendant Werner filed its first Motion for Partial Summary |
| 26 | Judgment re: Punitive Damages and Negligent Hiring on March 15, 2016. (Doc. 56). |
| 27 | Werner then filed a second Motion for Partial Summary Judgment re: Negligent Hiring |
| 28 | on May 5, 2016. (Doc. 74). Defendant Flores filed a notice of joinder to Defendant |

Werner's first Motion for Partial Summary Judgment, but did not file a notice of joinder to Werner's second Motion for Partial Summary Judgment. (Doc. 96).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In addition, a "genuine" issue means that a reasonable jury could find in favor of the non-moving party. *Id*. Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. The non-moving party "may not rest upon mere allegations or denials of [the moving party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249; *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

## III.    DISCUSSION

Plaintiff's Complaint alleges claims for negligence and negligence per se against all defendants. As to negligence, Plaintiff alleges that "Defendants failed to exercise reasonable care and fell below the standard of care in the operation of the subject

freightliner truck." (Doc. 1 at ¶ 29). Plaintiff further states that "Defendant Werner failed to exercise reasonable care and fell below the standard of care in the hiring, training and supervision of its employees, including Defendant Mauricio Alberto Flores." *Id.* at ¶ 30. As to negligence per se, Plaintiff alleges that "Defendants violated traffic safety laws in the State of Arizona" and as a result of these violations, are negligent per se. *Id.* at ¶¶32–33. Finally, Plaintiff seeks punitive damages based on Defendants' alleged willful or wanton conduct. *Id.* at ¶ 34.

In their first motion for summary judgment, Defendants contend that Plaintiff's punitive damages claim should be dismissed because the admissible evidence shows that Flores' driving was at most negligent or grossly negligent, but not at the level to warrant punitive damages. (Doc. 56). Defendants further argue that Plaintiff's negligent hiring claim should be dismissed because there is no evidence that Werner negligently hired Flores. In the second motion for summary judgment, Defendant Werner further argues that Plaintiff's claims for negligent hiring, supervision, and training should be dismissed because Werner admits that Flores was acting within the course and scope of his employment, and therefore Werner's direct liability for negligent entrustment is subsumed within its vicarious liability. (Doc. 74).

Plaintiff counter argues that the jury is entitled to hear evidence from Plaintiff's witnesses regarding Flores' conduct to determine whether a punitive damages award is appropriate. (Doc. 98). Plaintiff further contends that Arizona recognizes the concurrent cause doctrine, which allows Plaintiff to proceed on his negligent hiring, supervision, and training claim against Werner, despite Werner's admission that Flores was acting within the course and scope of his employment.

### A. Punitive Damages

"Exemplary or punitive damages are those damages awarded in excess of full compensation to the victim in order to punish the wrongdoer and to deter others from emulating his conduct." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330 (1986); *see also Quintero v. Rogers*, 221 Ariz. 536, 540 (2009). In *Rawlings v. Apodaca*,

151 Ariz. 149, 162 (1986), the Arizona Supreme Court noted that "punitive damages are only recoverable under special circumstances." The court held that punitive damages are only available in "those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind." *Id.* An evil mind "may be manifested in either of two ways[:] It may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.* The court concluded that "punitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur." *Id.* (citing former A.R.S. § 13-105(5)(c), defining criminal recklessness [now A.R.S. § 13-105(10)(c)]).

In *Linthicum*, the Arizona Supreme Court held that "before a jury may award punitive damages there must be evidence of an 'evil mind' and aggravated and outrageous conduct." 150 Ariz. at 331. The court further defined "aggravated and outrageous conduct . . . [a]s conscious action of a reprehensible character." *Id.* In *Gurule v. Illinois Mutual Life and Casualty Co.*, 152 Ariz. 600, 602 (1987), the Arizona Supreme Court found that "pursuit of wrongful conduct with conscious disregard of the probability of some injury or damage to the rights and interests of others all qualify as forms of 'evil mind,' justifying imposition of punitive damages."

To recover punitive damages, a plaintiff must prove evidence of the defendant's evil mind by clear and convincing evidence. *Linthicum*, 150 Ariz. at 332. "The plaintiff may meet the clear and convincing standard by either direct or circumstantial evidence which persuades the jury of the high probability of the defendant's evil mind." *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132 (Ct. App. 1995). In considering a motion for summary judgment, if the court finds that "a reasonable jury could find the requisite evil mind by clear and convincing evidence, then the court must deny a motion for summary judgment on the issue of punitive damages." *Quintero*, 221

Ariz. at 541 (internal quotations and citations omitted). Further, the court "will allow a jury to consider a punitive damages award if sufficient circumstantial evidence exists." *Id.* However, "a jury will not be permitted to consider an award of punitive damages if the evidence supporting such an award is only slight and inconclusive." *White v. Mitchell*, 157 Ariz. 523, 529 (Ct. App. 1988).

Here, Defendants argue that the admissible evidence fails to show that Flores acted with the requisite "evil mind" to warrant an award of punitive damages. In contrast, Plaintiff contends that punitive damages are an issue for the jury, and that there is "considerable reasonable evidence in this case establishing that Flores' outrageous and unjustified conduct rose to the level sufficient to support a punitive damages award." (Doc. 98 at 6). Plaintiff and Defendants offer contrasting accounts of what lead Flores to drive his tractor trailer in the opposite lane of traffic, ultimately resulting in the collision that injured Plaintiff. Just as Defendants are entitled to present testimony regarding Flores' alleged tire failure, Plaintiff is entitled to put on witnesses who will testify as to what they observed at the time of the crash. The Court also presumes that both parties will likely offer expert testimony as to whether Flores' truck had a pre-collision tire failure. It is not the province of the Court to weigh this evidence now and determine whether a punitive damages award is appropriate; rather, "[t]he question of whether punitive damages are justified should be left to the jury if there is any reasonable evidence which will support them." *Farr v. Transamerica Occidental Life Ins. Co. of Calif.*, 699 P.2d 376, 384 (Ariz. Ct. App. 1984); *see also Newman v. Sun Valley Crushing Co.*, 173 Ariz. 456, 458 (Ct. App. 1992) ("Summary judgment is inappropriate . . . where the trial judge would be required to pass on the credibility of witnesses with differing versions of material facts, . . . required to weigh the quality of documentary or other evidence, and . . . required to choose among competing or conflicting inferences.") (internal quotations and citation omitted). The evidence before the Court is sufficient to meet this standard.

In sum, the undisputed fact of this litigation is that Defendant Flores crossed the

double yellow lines and drove his tractor trailer in the opposing lane of traffic, crashing into Plaintiff's vehicle. The parties dispute Flores' reason for driving across the center line and whether his conduct reflects a conscious disregard that a substantial and unjustifiable risk of significant harm to others would occur, such that punitive damages are warranted. This is precisely the kind of question that the trial judge cannot answer on summary judgment, and is properly reserved for the jury. The undersigned finds that the evidence supporting such an award is more than "only slight and inconclusive," and the jury must evaluate the testimony at trial and determine whether a punitive damages award is appropriate. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment on Plaintiff's punitive damages claim be denied.[1]

### B. Negligent Hiring, Training, and Supervision

"An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Joseph v. Dillard's, Inc.*, 2009 WL 5185393, at \*18 (D. Ariz. Dec. 24, 2009). "In Arizona, '[f]or an employer to be liable for negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort.'" *Id.* (quoting *Kuehn v. Stanley*, 208 Ariz. 124, 130 (Ct. App. 2004)).

Here, Werner's argument is premised on the Arizona Supreme Court case of *Lewis*

---

[1] While the undersigned makes no recommendation at this time as to whether A.R.S. § 13-807 applies here to conclusively establish that Flores' conduct warrants punitive damages, or what effect Flores' plea has on Werner's potential vicarious liability, the Court notes that Arizona allows "punitive damages against an employer for acts of its employees 'so long as committed in the furtherance of the employer's business and acting within the scope of employment.'" *Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 310 (1987) (quoting *Western Coach Co. v. Vaughn*, 9 Ariz. App. 336, 338–39 (1969)); *see also Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 322 (Ct. App. 1984) ("we allow punitive damages against the corporate employer for the acts of an employee under the doctrine of respondeat superior."); *Hyatt Regency Phoenix Hotel Co.*, 184 Ariz. 120; 1–5 The Law of Negligence in Arizona § 5.05 (2016). Further, in *Quintero*, the court found that where the defendant pled guilty to reckless driving and endangerment, he could not deny recklessness in the civil suit against him pursuant to § 13-807. 221 Ariz. at 542 (noting that the defendant's "reckless behavior is the precise conduct *Rawlings* cited to as an example of when a jury may find punitive damages appropriate."). However, "[w]here no punitive damages have been awarded against an employee, no punitive damages can be vicariously imputed to the employer." *Wiper*, 152 Ariz. at 311.

- 10 -

*v. Southern Pac. Co.*, 102 Ariz. 108 (1967). In *Lewis,* the court held that where the employer does not dispute that the defendant employees were acting within the course of their employment at the time of the accident, and if the defendant employees were actually negligent and proximately caused the accident, this is sufficient to establish the employer's liability. *Id.* at 109. The court further stated that "the failure of an employer to hire only competent and experienced employees does not of itself constitute an independent ground of actionable negligence." *Id.* Plaintiff urges the Court to adopt the Arizona Court of Appeals position instead, as stated in *Quinonez v. Anderson*, 144 Ariz. 193 (1984). There, the court held that even where the employer admits that its employee was negligent and was acting within the course and the scope of his employment, the plaintiff can maintain both a negligent entrustment cause of action and a respondeat superior liability cause of action. The *Quinonez* court further stated that "we are of the opinion that [*Lewis*] no longer represents the law in Arizona." *Id.* at 197. While *Lewis* has not been explicitly overruled, as Plaintiff correctly notes, "***no*** published decision has cited to *Lewis* since *Quinonez*." (Doc. 98 at 13).

The undersigned finds that while there is a conflict as to whether *Lewis* or *Quinonez* best represents the current law in Arizona regarding whether a plaintiff may pursue an action for both respondeat superior liability and direct liability for negligent hiring, retention, or supervision, the Court need not reach this issue to resolve the present dispute because the facts alleged do not support a claim for negligent supervision.

In its first motion for summary judgment, Werner argues that Plaintiff has not disclosed any witnesses to testify that Werner was independently negligent, or any evidence to show that Werner's hiring, training, or supervision of Flores warrants punitive damages. (Doc. 56 at 5–6).[2] Plaintiff contends that "there is evidence that Werner allowed Flores to operate a commercial vehicle that should have been out-of-service for mechanical problems at the time of the crash, and that Werner was not

---

[2] In its second motion for summary judgment, Werner focuses its argument on *Lewis* rather than the specific facts of Plaintiff's negligent hiring, training, or supervision claim. (Doc. 74).

properly monitoring/supervising Flores." (Doc. 98 at 3). In support of his arguments, Plaintiff presents facts showing that Werner did not train Flores on the dangers of trying to pass in a no passing zone, that Werner had the ability to monitor Flores for safety issues through the use of electronic logs but did not do so, and that Werner has requirements for on-time deliveries, which Flores had received warnings about in the past.[3] Werner contends that there is no admissible evidence that shows that any of Werner's alleged negligent acts actually caused the crash that injured Plaintiff.

The Court finds that although the parties present differing versions of the events leading to the collision, Plaintiff has not pointed to any evidence that would support a claim for negligent hiring, training, or supervision.[4] There is no evidence that Werner told its drivers to disobey traffic laws; rather, Jaime Maus, Vice President of Safety and Compliance at Werner, testified that "Werner drivers are taught to obey the rules of the road so that they do prevent accidents on the roadways." (Doc. 100-1 Ex. 3 at 42). Further, while Plaintiff contends that the tractor trailer Flores was driving had mechanical problems prior to the crash,[5] neither party is suggesting that the crash was the result of mechanical error. As Werner noted at oral argument, "this isn't a case where defective breaks on the tractor caused the accident. This is a head-on collision where the driver was in the wrong lane. Breaking had nothing to do with it." (Doc. 117 at 15:4–7). And, while Plaintiff presents evidence that Werner was not checking the electronic safety logs, which reveal that Flores did not log any on-duty time of observing his driver-trainee,[6] there is no assertion that Flores' failure to either observe the trainee or correctly log the time somehow caused the crash. Though Plaintiff suggests that this combination of factors

---

[3] Plaintiff's theory of the case is that Flores was worried about making a late delivery due to the detour, and was trying to make up time by passing cars on US-70.

[4] At oral argument, Plaintiff conceded that he had not developed any facts regarding negligent hiring. (Doc. 117 at 12:23–25).

[5] This evidence is in the form of DeJonghe's expert opinion, which is based in part on the Arizona crash report documenting mechanical problems of the vehicles.

[6] This evidence is also based on DeJonghe's opinion.

- 12 -

lead to a "laissez faire attitude" that "gave room and encouragement to Flores to push the boundaries and take the hazardous and inexplicable risk of trying to pass vehicles on US-70" (Doc. 98 at 12), the undersigned finds that the factual connection is too attenuated and is insufficient to create a genuine issue of material fact such that a reasonable jury could find in favor of Plaintiff.

In sum, the undersigned finds that Plaintiff has failed to put forth sufficient facts to defeat summary judgment on the negligent hiring, training, and supervision claim. Accordingly, the undersigned recommends that the Court grant Defendants' motions for summary judgment on Plaintiff's negligent hiring, training, and supervision claim.

## IV.     RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that the District Court grant in part and deny in part Defendant Werner's Motion for Partial Summary Judgment re: Punitive Damages and Negligent Hiring (Doc. 56). Specifically, grant the motion as to the negligent hiring claim and deny the motion as to the punitive damages claim.

**IT IS FURTHER RECOMMENDED** that the District Court grant Defendant's Motion for Partial Summary Judgment re: Negligent Hiring (Doc. 74).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-14-2474-TUC-RM**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

. . .

Dated this 9th day of January, 2017.

_____
Eric J. Markovich
United States Magistrate Judge